# The Southern Ry. Co., *v.* Leard.

*Action for Damages for Flooding Lands by Negligent Construction of Bent of Bridge in Stream.*

(Decided Dec. 19, 1905.　39 So. Rep. 449.)

1. *Discontinuance; Lack of Prosecution; Time for Amendment after Demurrer.*—Demurrer was sustained to a complaint and leave granted to amend; amendment was not made at that term, and the cause was continued at the succeeding term, without objection, and without amendment being filed; the complaint was amended at the following term. Held, a motion for a discontinuance on ground that the complaint had not been amended within a year after leave granted, was properly overruled.

2. *Waters and Watercourses; Obstruction of Stream; Flooding Lands; Action; Pleadings.*—The allegations in the complaint that plaintiff owned certain described lands, which were damaged by the improper construction of the bridge, shows the ownership of the lands in plaintiff sufficiently definitely.

3. *Same; Description of the Lands.*—The complaint describes the lands by government subdivisions, alleged that the bridge was located on plaintiff's lands, and that the lands damaged

were those lands lying along the banks of the stream adjacent to the bridge; Held, to sufficiently describe the lands alleged to have been damaged.

4.  *Appeal; Harmless Error; Demurrer.*—Where the defense sought to be set up by plea special is available under the general issue, which was pleaded, it was harmless error to sustain demurrer to such special plea.

5.  *Waters and Watercourses; Obstructing Stream; Flooding Lands; Action; Pleadings.*—A plea in an action against a railroad for damages to land for flooding caused by the improper construction of its bridge, which alleges that plaintiff contributed to the injury by placing within the stream logs, brush, etc., which in high water will wash down the stream causing the damage complained of, is not subject to demurrer that the plea did not deny that the negligence complained of was not the proximate cause of the injury, or that it did not show that plaintiff owed the defendant any duty or that it did not show that the negligence of the plaintiff was the sole cause of the injury, or that if plaintiff was guilty of the negligence complained of, the plea did not show that defendant's negligence was not the sole cause of the injury, or for failure to negative defendant's negligence and attempting to set up contributory negligence, without averring that plaintiff's negligence was the sole cause of the injury.

6.  *Same; Evidence; Admissibility.*—It being shown that the husband attended to the lands as the agent of his wife, and the deed placing the title in her, it was not admissible to show by the husband how many times his wife was on the land during the year when the damage was done.

7.  *Same.*—Evidence as to whether there was a mortgage on the lands alleged to have been damaged by the obstruction of the stream was irrelevant and properly disallowed.

8.  *Same.*—It was immaterial whether the husband was paid any wages by the wife for looking after the lands as agent.

9.  *Same.*—In the absence of a showing that it was done with the knowledge of the plaintiff, it was not competent to show that the husband of plaintiff listed the lands for taxes in his own name.

10. *Evidence; Best Evidence; Transfer of lease.*—The written transfer upon the lease was the best evidence on the issue whether the lease was transferred.

11. *Same; Tax Assessments.*—The tax books are the best evidence as to the price at which lands were assessed for certain years.

12. *Witnesses; Competency; Interest.*—Where the action was against

[Southern Ry. Co. v. Leard.]

the railroad for flooding plaintiff's land by placing obstructions in the stream, the fact that a person held a mortgage on the land did not show that such person had an interest in the suit, when examined as a witness.

13.  *Trial; Order of Proof; Evidence Dependent on Preliminary Proof.*—The evidence disclosed that witness and another were engineers, but the extent of their experience was not shown; Witness testified that he made his profile on a certain date, and that the other engineer had made one previously and that he had the other survey with him when he made his survey; Neither a map or profile had been exhibited to the jury, the contents of neither had been shown, nor had it been shown that they were correct; Held, that an objection was properly sustained to a question to the witness "to state how a certain survey by another compared with his."

14.  *Same; Objections to Evidence.*—Where the question put to witness was not objected to and the answer made was responsive, it was not error to overrule the motion to exclude the answer.

15.  *Appeal; Record; Scope; Necessity of Bill of Exceptions; Review of Evidence.*—The map offered in evidence was not copied into the bill of exceptions nor in any way made a part of the bill, though there was a map loose in the record having a certificate attached to it to the effect that it was the original map, this court cannot consider an assignment of error based on the introduction of the map in evidence.

16.  *Waters and Water Courses; Obstruction of Stream; Flooding Land; Evidence.*—In an action for flooding land brought about by the obstruction of a stream charged to be due to placing double bents in the stream, it was proper to permit an expert bridge builder to testify that there would be more obstruction from four single bents than from two double ones, and its exclusion was error.

17.  *Same; Instructions.*—An instruction which asserted that if a lease of the lands for that year was transferred to plaintiff's husband the issue must be found for the defendant, was misleading, where the evidence tended to show that the husband of plaintiff was in possession and control of the lands during the year when the damage was done as the agent of plaintiff.

18.  *Same.*—For like reasons, an instruction asserting that if the jury was satisfied that the husband of plaintiff was in possession and control of the lands involved during the year when the damage was done, the verdict must be for defendant, was properly refused.

19.  *Same.*—A charge asserting that in the construction or maintenance of railroad bridges, common prudence requires the

employment of at least ordinary engineering skill to avoid injury to property from the obstruction of natural streams; but those engaged in such undertaking are not bound to provide against floods in the summer season or other season when the ground on cultivated land is ploughed up and crops growing thereon, of which the usual course of nature affords no premonition, yet they are bound to use ordinary care to build so as not to obstruct, to damage of others, rainfalls such as may reasonably be expected, whether they are likely to be of frequent or rare occurrence, was properly refused for failure to negative negligence on the part of the defendant and for assuming that the freshet was one of which the usual course of nature afforded no premonition.

20. *Same; Title and Right to Sue.*—One in the actual peaceable possession of land under claim of ownership, or color of title, may recover for the flooding of lands caused by an obstruction in the stream, of a railroad bridge.

APPEAL from Wilcox Circuit Court.

Heard before Hon. JOHN MOORE.

This was an action for damages for placing double bents in a creek and diverting the mud and water from the said creek on plaintiff's land. It is alleged that the bents were constructed by the railroad company to support a bridge across the creek over which their tracks ran. Demurrers were sustained to the original complaint and leave granted to amend. The complaint was not amended at that time. At the next term the cause was continued and no amended complaint was filed but at the succeeding term an amendment was made to the complaint on which this issue was tried. There was motion made by defendant for discontinuance of said cause on the ground of the failure for a year to amend after demurrers were sustained. The court overruled the motion. Defendant then filed the following pleas:

First, the general issue. 2, that the defendant in constructing and keeping in repair the bridge complained of exercised such care and diligence as a man of caution and prudence would exercise under like circumstances. 3, That the bridge now over Chilatchi Creek complained of in said complaint is constructed according to the best known methods of railroad bridge building. 4th. That

the bridge over Chilatchi Creek described in the complaint is constructed according to the best known methods of railroad bridge building, and constitutes no hindrance to the flow of water down the channel of said creek more than is unavoidable. 5th. That the bridge complained of by the plaintiff is supported by two double bents and the bridge prior to the bridge complained of was supported by four single bents and the space for the water to flow under latter bridge is much greater than the space under the former bridge. 6th. That timber, brush debris were left in the path of Chilatchie creek above said bridge complained of by the plaintiff in her complaint, by the negligence of the plaintiff to the very great damage of the defendant in being continuously washed down against said bridge, in the sum of one thousand dollars which is claimed of the plaintiff by the defendant by counter suit in recoupment in this case. 7th, And for answer to the complaint filed on the seventh day of November, 1902, (amended complaint) pleads the statute of limitation of one year. 8th plea set out in the opinion.

To the 8th plea the following demurrers were filed: 1st. Plea does not deny that the negligence complained of was not the proximate cause of plaintiff's injury. 2nd. It is not shown that the plaintiff owed the defendant any duty in the premises. 3rd. Because it is not shown that the negligence of the plaintiff was the sole and conducive cause of the injury complained of. 4th. If the plaintiff was guilty of the negligence complained of, plea does not deny that the defendant's negligence was not the sole and only cause of the injury complained of. 5th. Because said plea fails to negative negligence on part of the defendant and attempts to set up contributory negligence on part of the plaintiff without averring that the negligence on the part of the plaintiff was the sole and conducive cause of plaintiff's injury. The demurrers to pleas 2, 4 and 5, besides going to the sufficiency of the pleas, asserted that they set up matters triable under the general issue. The demurrers to plea 6 are as follows: Because the matters attempted to be set

up by way of recoupment are foreign to plaintiff's cause of action. The following charges were requested by the defendant and refused by the court:

Charge C. The court charges the jury that if Charley Voltz had a lease on said lands for the year 1901, and that said lease was transferred to T. S. Leard, the husband of plaintiff, then they must find the issue in favor of the defendant.

Charge D. The court charges the jury that if they are reasonably satisfied from the evidence that T. S. Leard was in possession and control of the land involved in this suit during the entire year 1901, then they must find their verdict in favor of the defendant.

Charge G. The court charges the jury that if the plaintiff did now show legal title to the land by chain of title from the government, or by title from some one who was in actual possession of the land, they must find issue in favor of defendant.

Charge 9. The court charges the jury that in the construction and maintenace of railroad bridges common prudence requires the employment of at least ordinary engineering knowledge and skill to the end of avoiding injury to property which will probably come from the obstruction of natural streams or waterways; but those engaged in such undertaking are not bound to provide against floods in the summer season or other season, when the ground on cultivated land is ploughed up and crops growing thereon, of which the usual course of nature affords no premonition yet they are bound to use ordinary care to build so as not to obstruct to damage of others, rainfalls, such as may reasonably be expected whether they are likely to be of frequent or rare occurrence.

MILLER & MILLER and PETTUS, JEFFRIES & PARTRIDGE, for appellant.—The court erred in refusing appellant's motion for discontiruance, and in refusing to strike the amended complaint. The appellee was bound to come into court with her amendment before the next term or by the next term after demurrer confessed else

[Southern Ry. Co. v. Leard.]

she was without a complaint and there was a lapse. General continuances cannot add life to a dead cause.—*Roland v. Ladiga*, 20 Ala. 9; *State, ex parte*, 71 Ala. 367. One or the other motions should have been granted.—3 Mayfield, p. 73. This is not a case of concurring laches, but laches wholly changeable to appellee.—*Malone v. Marriott*, 64 Ala. 486; *Ex parte State*, 115 Ala. 133. The new complaint seeks recovery for different damages from the old complaint, and the sixth ground of demurrer should have been sustained.—*Western Ry. Co. v. Davis*, 66 Ala. 578; *Adams v. Thomas*, 54 Ala. 174. The 7th ground of demurrer should have been sustained.—*Winter v. Mobile Saving Co.*, 54 Ala. 174. The court erred in sustaining plaintiff's demurrer to plea 2.—*Gulf Red Cedar Co. v. Walker*, 132 Ala. 553. The demurrer to the 4th plea was improperly sustained.—*Gulf Red Cedar Co. v. Walkerf, supra; Southern Ry. Co. v. Plott*, 131 Ala. 312. Demurrers were improperly sustained to plea 8.—Acts 1896-7, p. 613. The court erred in sustaining objection to the question to Charles Voltz.—*Daffron v. Crump*, 69 Ala. 77. The rule requiring best evidence does not apply.—*Foxworth v. Brown Bros.*, 120 Ala. 59. The court erred in refusing to give charge C.—*Boswell v. Jones*, 70 Ala. 244; *O'Neal v. Simonton*, 109 Ala. 167; *Garrett v. Sewell*, 108 Ala. 521; *Stewart v. Tucker*, 106 Ala. 319; *Cooper v. Watson*, 73 Ala. 252; *Beatty v. Brown*, 78 Ala. 287; *Ala. Midland R. v. Martin & Bro.*, 100 Ala. 511. The court erred in refusing to give charge 9.—*Columbus Ry. Co. v. Bridges*, 86 Ala. 448; *Gulf Red Cedar Co. v. Walker*, 31 So. 374; *Southern Ry. Co. v. Plott*, 31 So. 33; *B'ham Ry. & Elec. Co. v. Dorse*, 32 So. Rep. 493. The facts of this case are ex delicto and case; but the averments of the complaint, taken altogether, are in trespass. —*Mobile Ins. Co. v. Randall*, 74 Ala. 170; *Wilkerson v. Mosely*, 18 Ala. 288.

E. E. TAYLOR and GODBOLD & JONES, for appellee.—No brief came to the reporter.

DENSON, J.—After demurrer was sustained to the complaint and leave granted the plaintiff to amend, she allowed an entire term of the court to pass without making an amendment or offering to amend the complaint. At the term of the court following that at which the demurrer was sustained the cause was continued generally and at the next term the complaint was amended.

"The practice is settled by numerous decisions of this court, that if there be not some positive intervention or direction on the part of a plaintiff the neglect of the clerk to docket a cause, *and the failure to take orders therein for several terms, will not operate a discontinuance,* unless the lapse of time is so great that a presumption of payment or extinguishment would arise." (Italics ours).—*Malone & Foote v. Marriott,* 64 Ala. 486, and cases there cited; *Ex parte State,* 71 Ala. 363.

Applying the rule above enunciated to the facts of this case, it is clear that the insistence of the appellant that the cause was discontinued is untenable. Moreover, the cause was continued at the spring term, 1902, without objection on the part of the defendant. The advantage of a discontinuance must be claimed at the earliest period.—*Hayes v. Dunn,* 136 Ala. 528, 34 South. 944, and authorities there cited.

The action is case by the plaintiff, Evelyn Leard, against the defendant, Southern Railway Company, to recover damages alleged to have been sustained by the plaintiff on account of the alleged negligent placing of two double bents of a bridge of the defendant in the channel of Chilatchie creek causing the creek to overflow plaintiff's lands. It is averred in the complaint that the plaintiff owned a large tract of land through which the Chilatchie creek flowed, the creek being the line between the counties of Wilcox and Dallas, and plaintiff's lands being located partly in Wilcox and partly in Dallas county. The lands are particularly described by the government subdivision of sections and the averments in the complaint show the subdivisions described are contiguous and when taken together form a compact tract. It is shown by the averments of the complaint that the

defendant's road runs through said tract of land and crosses Chilatchie creek. The defendant for its use in operating its road erected a bridge over said creek. After averring that the defendant operates a railroad over and across the said Chilatchie creek and over and across the afore described lands of plaintiff, the averment of the complaint with respect to the place where the bridge was erected is in this language: "Which said bridge is builded across said creek on lands formerly owned by plaintiff, and which are now used by the defendant as a road-bed for the operation of its aforesaid railroad. Then immediately follows this averment: "Plaintiff avers that the said bridge builded by the defendant on her said lands, and over the said Chilatchie creek, is the first bridge owned by the defendant north of Alberta, Alabama, and is known as "Sixteen Eight." It is also averred in the complaint that the plaintiff is the owner of the lands. "both above and below the bridge builded by the defendant as aforesaid."

Construing the averments of the complaint together, we think the ownership of the lands in the plaintiff and the location of the bridge are shown with sufficient certainty. It was not indispensable that the complaint should have pointed out the particular forty acres that were damaged, the complaint, however, is certain to a common intent in this respect, when it describes the land damaged as, "all that part of plaintiff's land lying along the banks of said creek and adjacent to the said bridge of defendant "Sixteen Eight."

The damages recoverable under the complaint, as last amended, were recoverable under the original complaint, and the cause of the injury averred is the same, hence the doctrine of departure insisted upon by the defendant in its motion to strike and in its demurrer, has no application.

The averments of negligence in placing the bents in the channel of the stream are sufficient under our liberal system of pleading.

The defendant pleaded the general issue and seven special pleas, demurrers were sustained to all of the spec-

ial pleas and the cause was tried on issue joined on the plea of the general issue.

It is sufficient to say of the assignments of error with respect of the ruling of the court on the demurrer to pleas 2, 4 and 5 that, conceding that the matter therein pleaded was good as a defense to the cause of action, and that the pleas were sufficient in form, the defense could have been made under the plea of the general issue. Hence, if the court erred in sustaining the demurrers it was error without injury to the defendant.—*Louisville & Nashville Railroad Company v. Hall*, 131 Ala. 161, 32 South. 603; *L. & N. R. R. Co. v. Davis*, 91 Ala. 487, 8 South. 552.

Plea six was subject to the demurrer and the court properly sustained it.

The demurrer to the 7th plea, which presented the statute of limitations, was properly sustained.

The plaintiff's cause of action, as shown by the complaint, accrued within a year previous to the date of the filing of the complaint, and there is no averment in the plea that it accrued earlier.—*S. A. & M. R. R. Co. v. Burford*, 106 Ala. 303, 17 South. 395. The plea as is shown by the appellant's brief, was filed upon the theory that the complaint filed in November presented a new cause of action and was not amendatory of the original complaint. The complaint filed in November, 1902, must be treated as an amendment and was made obviously for the purpose of meeting the demurrer with respect to the lack of any averment of negligence in the original complaint; it did not present a new cause of action, and was within the *lis pendis.*—*Winston v. Mitchell*, 93 Ala. 554, 9 South. 551; *Chambers v. Talladega Real Estate & Loan Association*, 126 Ala. 296, 28 South. 636; Mayfield's Dig. p. 92. subdiv. 25.

The 8th plea is in this language: "And for further answer to said complaint filed on the 7th day of November, 1902, the plaintiff contributed to the injury complained of by placing within the path of said Chilatchie creek above said bridge, logs, brush and saplings which in high water were washed down said creek, and caused the damage complained of in her said complaint."

We think the plea was not subject to the demurrer made to it on any of the grounds assigned and the demurrer should have been overruled.—*Lillie v. Fletcher*, 81 Ala. 234, 1 South. 273.

The evident purpose of the attempt to show that the lease held by Voltz of the lands was transferred to T. S. Leard, was, that T. S. Leard had the possessory interest in the lands for the year 1901, and, therefore, that the title to the crops for 1901, was in him, and not in the plaintiff. Thus the transfer of the lease was not collateral matter but had direct bearing on plaintiff's title and the written transfer was the best evidence of the fact.

Witness Leard on cross-examination, without objection had once answered that the Voltz lease included the land for 1901, hence, there was no injury to the defendant in the court not allowing him to answer the question calling for that answer again.

Witness Leard, husband of the plaintiff, had testified that he attended to the lands as agent of his wife and that he took charge in January, 1901; the deed in evidence placed the title in the wife, the husband's possession was the possession of the wife and it was immaterial how many times the wife went on the land in 1901, or whether she went on it at all, he had not testified that she went on it at any time. The court did not err in refusing to allow the witness to answer the question: "How many times did your wife go on the land in 1901?" It was also wholly immaterial whether Leard was paid wages by his wife or not.

It was not competent to show that the husband of the plaintiff listed the lands for taxes in his own name, especially in the absence of any offer to show that it was done with knowledge of the plaintiff. And the court did not err in declining to allow such proof to be made by the defendant. But the record shows that subsequent to the ruling of the court declining to allow the defendant to make such proof by the witness Leard, the defendant without objection offered in evidence the tax assessment list for 1901 and 1902, which showed that the lands were assessed in the name of the husband, T. S.

Leard, at $1,000.00. So the defendant received the benefit it sought.

If it was competent to prove the price at which the husband of plaintiff assessed the lands in the year 1900, and the year 1901, the tax books were the best evidence of the fact, and the court properly sustained plaintiff's objection to the question asked witness Leard calling for parol evidence of the fact.—*Doe ex dem. etc. v. Edmondson,* 37 So. Rep. 424.

Whether or not there was a mortgage on the land in 1901, was patently irrelevant, it could in no wise have affected the plaintiff's right to recovery against the defendant that did not connect or offer to connect itself with the mortgage.—*Allen v. Kellam,* 69 Ala. 442, and authorities there cited.

The witness Doak, who had given material evidence for the plaintiff was asked on cross-examination the question: "Have you not a mortgage on this land of Mrs. Leard?" It is insisted by the appellant that if the witness held a mortgage on the land it affected his interest in the suit, such as would have tended to show a discrediting bias. It is elementary, that the interest of a witness in the result of a suit may be shown, but the fact that the witness held a mortgage on the land did not, *prima facie,* tend to show that he was interested in the result of the suit, the suit not being to recover the land but for damages to it. As mortgagee he would not have had title or claim to the recovery, nor was it made to appear that his mortgage security would have been affected by the success or failure of the plaintiff in the suit. We think the court properly sustained the objection to the question.

At the time the witness Mosheir was asked by the defendant to state how Corcelius' survey compared with his; (if we take the evidence in the order in which it appears in the bill of exceptions), it had not been shown that the witness and Corcelius were civil engineers of "large experience," as is argued in appellant's brief, nor that maps or blue prints were made by them nor that the maps were before the jury as evidence. At the time the

question was asked the evidence had only shown that Mosheir and Corcelius were assistant engineers of the defendant (civil engineers, we assume, though the bill of exceptions shows it only inferentially), the extent of their experience or that they had any experience had not been shown.. Mosheir testified that he made his profile on the 4th of November, 1902, and that Corcelius made one in 1901, he also testified that he had Corcelius' *survey* with him at the time he made his. Neither map nor profile had been exhibited to the jury, no testimony as to the contents of either, or that they were correct had been given. Under these conditions it is clear that the court did not err in sustaining plaintiff's objection to the question.

The witness Mosheir was subsequently shown to be an expert bridge builder of several years experience and was also shown to have accurate knowledge of the locality where the bridge was constructed. In view of the averments of the complaint with respect of the change made in the channel of the creek by the placing of the double bents in the creek from what it was while the single bents were there, the court erred in excluding the testimony of this witness, "that there would be more obstruction with four single bents than with two double bents."

The bill of exceptions shows that the witness Davis after testifying that he was with Corcelius when he made his profile of the bridge in 1901, and of the ground and creek, testified that Corcelius' map, shown him on the witness stand, was correct. Then follows this recital: "Map was offered and admitted as evidence." Subsequently the plaintiff moved to exclude the map, the court overruled the motion but limited the map as evidence to distances and measurements. Exception was reserved by the defendant to this action of the court. The map is not set out in the bill of exceptions nor is it in any way a part of the bill. True, there is a blue print map loose in the record which has a certificate of the clerk attached to it to the effect that it is the original blue print map that was offered in evidence and the one that the clerk was ordered to send up to the supreme court.

The certificate cannot make it a part of the bill of exceptions.—Rule of Practice No. 27, Code, p. 1191, does not authorize the omission from the transcript of original papers or documents that have been ordered sent up under its provisions. "They should be copied there, in all cases, where they constitute material testimony, whether the originals are transmitted to the appellate court or not." We cannot in the condition we find the bill of exceptions with regard to the matter, consider the assignment of error based upon it.—*Pruitt v. McWhorter,* 74 Ala. 315; *Wright v. Dunklin* ,83 Ala. 317, 3 South. 597; *Black v. Pate,* 136 Ala. 514, 34 South. 844. Furthermore, we deem it not at all certain that there is shown an order of the judge such as is required by Rule 27 of Practice.—*Frieder v. Goodman Mfg. Co.,* 101 Ala. 242, 13 South. 423; *Gardner v. State,* 96 Ala. 12, 11 South. 402.

The action of the court in overruling defendant's motion to exclude a portion of witness Shill's evidence may be justified upon the proposition, that the motion came too late.—*Billingslea's case,* 96 Ala. 126, 11 South. 409; *McCollum's case,* 96 Ala. 98, 11 South. 408; *Payne v. Long,* 121 Ala. 385, 25 South. 780. Furthermore it does not appear that the evidence was evoked on cross-examination; if drawn out by defendant, it had no right to have it excluded.

Charges C and D refused to the defendant, were misleading in their tendencies and possessed the vice of pretermitting consideration of the tendency of the evidence showing that T. S. Leard was in possession and control of the land during the year 1901, as the agent of his wife.

Charges A and 3 (general affirmative charges) refused to defendant, it is argued, should have been given on the theory, that the deed offered by the plaintiff to show title in her excepts from its operation two forties of the land therein described and twelve acres besides; that the evidence did not show precisely on what part of the land the damage was done and that it might have been on the excepted parts. In other words, that the burden of proof was on the plaintiff to show that the damage was on her

lands and there was no evidence from which the jury could have reasonably inferred that any damage was done to plaintiff's lands.

It is true that the land excepted in the deed is embraced in the complaint. T. S. Leard testified, however, that forty or fifty acres of the plaintiff's land were overflowed by the freshet and that it was damaged to the extent of $200.00 or $250.00. With this evidence before the jury the charges were properly refused.

Charge 9, refused to the defendant, is founded upon the abstract principle stated in the opening sentence of the opinion of this court in the case of *Southern Ry. Co. v. Plott*, 131 Ala. 312, 31 South. 33. The charge fails to negative negligence on the part of the defendant, and, besides, it assumed that the freshet was one of which the usual course of nature afforded no premonition. It was properly refused.—*Gulf Red Cedar Co. v. Walker*, 131 Ala. 553, 31 South. 374; *Fordham v. Northern Pacific Ry. Co.*, 66 L. R. A. 556, 104 Am. St. Rep. 729.

Aside from the fact that there was no conflict in the evidence with respect of the plaintiff's title to the land, charge G, refused to the defendant, asserted an unsound proposition. If the plaintiff was in actual, peaceable possession under claim of ownership or color of title, it was sufficient so far as her right of recovery against the defendant in this action was concerned.

For the errors pointed out, the judgment of the circuit court must be reversed and the cause remanded.

Reversed and remanded.

HARALSON, TYSON, DOWDELL and SIMPSON, JJ., concur.